I'm David Pash. I represent the plaintiff and the appellant in the Nurczewska matter. I'd like to try and, while answering all your questions, I'd like to try and keep a minute and a half or so, if I may, to respond to the argument from the Orsazer. This is, of course, a dismissal on a 12B6 motion of a first amended complaint. I think, at the outset, I should acknowledge that some of the claims that are set out in the amended complaint are no longer at issue because of mootness, a subsequent transaction with respect to the real estate. That would be the claims for specific performance and the claim dealing with the expungement of the Liz pendants. The property has been sold, it's changed hands, and a specific performance is a moot point. This is now a claim for damages. And the issue of the expungement of the Liz pendants is similarly. I understand this is outside the record. Do you know what the selling price was when it changed hands? Your Honor, I've seen two different figures for the selling price, and I don't know which is accurate. I've seen one of approximately $100,000 and one of $80,000 plus or minus. So that may be the range, and it's outside the record. That's the range we're talking about. It's outside the record. I got it. That's the best information I have. Somewhere in that $30,000 to $50,000 range for a damage claim. And, of course, this was never an original Federal case. Recall it was removed because of the special protection for the Freddies and Fannies in Federal law. So with that damage claim, we wouldn't have been talking about a Federal case anyway. The point I would make with respect to the dismissal is twofold. I believe that the complaint was the amended complaint was sufficient and ought not to have been dismissed in the first instance. I also contend that leave to amend ought to have been granted as it was requested. And towards that end, what I have tried to do in the brief is to set out, in the form of actual paragraphs, what form those amendments would take had leave to amend been granted. Your Honors are doing a de novo review of a dismissal under 12b-6, and I think it's only fair as part of that de novo review to deal with the issue of, could there be legitimate amendment of this pleading? Would you include a stand-alone claim for promissory estoppel? There are some issues with respect to promissory estoppel, especially when we're dealing with Freddie Mac. And I have not considered whether we need to do that. I think we have an adequate remedy at law if we were permitted to proceed on the contract and So that's off the table, promissory estoppel? I don't contemplate amending it, no. All right. I don't contemplate amending to add that, is what I would say, Your Honor. And it's not already in there? So you're making a contract claim, promissory estoppel is a ground for saying this is a contract? Would it be a grant for similar remedy? Yes. But I don't contemplate adding a specific promissory estoppel claim. What's her injury here? She lost the ability to bid on the property, right? That's it. She lost the ability essentially, Your Honor, to acquire a piece of real estate for a price. The credit bid was just over $50,000. She would have had a representative who was, had authority to bid more than that. I understand. And the property is worth more. No, but she would have been able to attend the auction, and she would have had the ability to bid against whoever was bidding for it, including the government, right? Correct. So we don't know where that would have ended up or who would have gotten the property. The government may have ended up with the property in any event. The government may have credit bid against her. That's fair. But the government did manipulate an auction. There was no one else there. No, I understand that point. I think the government, there's some issues about what the government did, but that's not the issue here. The issue here is whether you've set forth a cause of action. So tell me again what her damage is. The damage under California law, Your Honor, it's a remedy provided in our civil code, Section 33-something. I can't give it to you, the number. 2924. But it is the difference between what the property is worth and what she would have paid for it. I mean, essentially, she could have acquired a property worth $80,000 to $100,000 for somewhat over $50,000. Are you talking about 2924, which deals with the validity of the trustee's sale? Is that the section you're referring to? No, Your Honor. I'm referring to a different section, the general one for damages for a breach of a contract. So give me that again. What would the damages be, the difference between what and what? Between what she would have paid and what the actual value of the property would be, Your Honor. How do we know what she would have paid? Well, she's represented that she would have exceeded a credit bid of $50,400. There were no other bidders present. I think it would be a matter of proof at trial, but I think we're entitled to attempt to prove that she could have been a successful bidder at that sale and would have acquired the property. How do you prove that when the government's bid was higher? Well, the government was the sole bidder, Your Honor. There was no question of a higher bid. What we've alleged is that she would have had a representative at that sale who had authority to bid more than the credit bid that the government made. To engage in competitive bidding, but we have no idea where that would have gone. We have no idea whether the government would have made an excess of a credit bid. No, and I guess if this were to go forward and if it were to be worth it, I mean, with the amount of damages here at stake, at some point this is not worth litigating, but I guess you could get discovery from the government and ask, now what was your authority and what would you have done had the plaintiff bid $55,000? Would you have overbid? But that requires discovery. That requires at least getting back in court. Yeah, well, and then it requires discovery. Then it requires the government saying, well... What authority, if any, did the Freddie Mac representatives have and what is the policy with respect to other properties? I know we have alleged that the amount of the credit bid is about what properties were selling for in that area, an adjacent one. I believe we specifically alleged it sold in the neighborhood of about $48,000. So in dollar terms, what are you looking for under the best scenario that you could possibly conceive of in a trial? Well, the best scenario I could possibly conceive would be the difference between $51,000 and $100,000 in general damages. When the government promised to sell a property to her for $110,000, did she accept that offer or make a counteroffer? She did not make a counteroffer. Our contention is that what she did obtain and gave consideration for is the agreement to postpone the foreclosure sale for the day. So the contract, you allege, is an oral agreement by the government to postpone the sale and they breached that, depriving her of the ability to make a bid. The ability to attend. And the consideration is? The consideration is threefold, Your Honor. It's the cash deposit she made with her offer. It is the making... That was for the property, not for a promise to postpone the sale. We can argue that. Okay. I understand Your Honor's position. The second was the making the property available for the government's appraiser, which presumably is what gave the government the idea to advance the sale in the first place and place a credit bid. Tell me how that worked. What are you saying? The government wanted to appraise the property and asked that we make it available to them for an appraiser to inspect it. Why was your client in a position to make available? Because she doesn't own the property. She didn't, but she knows the people who did. She's related to the people who own the property who were going to make the short sale to her initially. So she was able to procure someone to make the property available to the government. Okay. Is that in the record that she actually did that? That is not in the record. That is something that would be amended. That is discussed in the briefs, and I don't believe that that fact is... Do you allege in generic terms reliance by her on the property? Excuse me, on the promise to postpone the sale. We allege that specifically in the amended complaint, Your Honor. We do not specifically allege the making the property available to the appraiser, for example. But you do say that you do use the word reliance. We do. And the third element of the consideration is procuring a buyer. Yes, I'm sorry? The third element is, of course, having a buyer to pay cash and not have to go through a foreclosure. Okay. Why don't we hear from Freddie Mac, and then we'll give you a minute. Very good, Your Honor. Thank you. May it please the Court. My name is Charlie Nunley, and I represent the Federal Home Loan Mortgage Corporation and J.P. Morgan Chase Bank. You guys didn't behave very well, did you? I'm sorry, Your Honor? You didn't behave very well, did you? I'm sorry? Your client. My client. By saying it would postpone the sale and not doing so. That doesn't seem to be operating according to Hoyle. Understood, Your Honor. And I can appreciate the Court's difficulty with that fact. However, I don't know that it's actually been established that that was indeed the case. That's been alleged in the complaint. Is that right? It has been alleged in the complaint. But it's not something that has been established. And, in fact, there was a lot of things alleged in the complaint. The complaint, and I think that's the most important consideration here, is on the rather abbreviated record that we have, which, of course, includes the First Amendment complaint. There is a great deal alleged in the complaint, most of which is speculation, most of which is conclusory. And, indeed, even the proposed amendments that have been offered are, for the most part, conclusory. And the issue becomes one of, on de novo review, considering what the Court had before it, the First Amendment complaint, and the record that's been presented here, is there a basis in that record for affirming what the District Court did, and that is grant the motion to dismiss? And, indeed, there is. And we addressed in our brief the particular deficiencies in the First Amendment complaint and the extent to which the Court was well grounded in granting that motion to dismiss. The real emphasis here, though, by appellant, is, boy, if we could only amend. You know, if we'd only had the chance to amend. But the standard with regard to denying an opportunity to amend is different, and that can't be ignored here. The standard there is an abuse of discretion. And if we examine the record through that lens, I think we see, once again, ample basis for affirming the determination and a woefully insufficient record upon which to depart. And the reason why I say that is because what appellant is seeking from this Court is to determine that the District Court abused its discretion in denying leave to amend when the appellant didn't even offer to the District Court how it is that this pleading was amenable to amendment. There is nothing in the record that suggests, other than the bald and blank request for an opportunity to amend, should the Court be inclined to dismiss, nothing that suggests that the Court had any indication at all that the pleading was in any way amenable to amendment, which left to the Court to speculate as to what the appellant might have put in the complaint. And that's not a position that the District Court should find itself in. Is reliance already alleged in the complaint? There is the formulaic pleading of reliance upon a representation, an alleged misrepresentation. That is correct. It is in there. Okay. Putting to one side the level of detail that might or might not be required by ICBO, is it an enforceable contract if your client has said, we will not hold the sale until day X? His client does something in reliance on that to his detriment. So we get the formulaic sense, detrimental reliance. Your client then holds the sale a day early in violation of what it said it would do. Is that an enforceable contract because of the detrimental reliance? Detrimental. That is to say the contract that I will delay by a day. Yeah. Detrimental reliance in this instance is insufficient in and of itself. Because? Because. First, the statute of frauds. This is, as we suggest in the brief, the paradigmatic, gratuitous promise to postpone a trustee's sale. There is no consideration flowing from the appellant to Freddie Mac. Why is detrimental reliance not consideration? It typically is. Detrimental reliance, with regard to the statute of frauds, the exceptions are either performance or, in the case of promissory estoppel, a substantial change in position that would substitute for the consideration. Well, that's what I'm saying. Detrimental reliance is a substantial change in position to the detriment of the person who's changing the position. Were they to plead a cause of action for promissory estoppel. But that cause of action wasn't in the complaint that was dismissed. Neither was it suggested to the Court that they would include a promissory cause of action. And, indeed, now today we hear that even if they had the opportunity yet again to amend, promissory estoppel would not find itself in the complaint. So without pleading promissory estoppel, the detrimental reliance is really immaterial. And it's in the brief, and I won't belabor it, but even had they pleaded promissory estoppel, it would have been insufficient. And the Court was certainly within its bounds to dismiss. We have to remember that this was a First Amendment complaint. This was the second opportunity that the appellant had to plead these claims. And I would agree that at the first turn in the barrel, a court dismissing and doing so without leave to amend would approach the level of an abuse of discretion. But here the Court carefully examined the position of the parties. And the position of the parties was such that a claim for breach of contract, well, Freddie Mac couldn't contract to sell this property, didn't own it. The most Freddie Mac could do was contract to agree to accept a particular price. Well, that's not a contract either. That's an agreement to consider a potential contract down the road. Indeed, Freddie Mac could have agreed to postpone the sale for consideration had there been some consideration for it. But that wasn't pleaded. We know it, and there was never an intent to plead that. So in terms of a breach of contract and breach of the implied covenant of good dealing, the Court was well within its bounds to say that, well, there is no possibility of amending it. You know, I'm coming back to the statute of frauds question. I'm not sure why you even need an exception to the statute of frauds given what's alleged here. The promise was not a promise by Freddie Mac to sell the property to these people, because as you just said, Freddie Mac didn't own it at the time it made the promise. Indeed. The promise was rather we will postpone the sale of somebody else's property by a day, and they don't fulfill the promise. There's then reliance on that promise, according to his allegation, resulting in damage. But the promise was never a promise by Freddie Mac to sell the property to these people. The promise was to delay by a day. And according to them, the failure to abide by the promise has damaged them. But this promise did not involve any promise to sell to these people the property. So I don't see why the statute of frauds even comes into the case. The statute of frauds is applicable to any agreement with respect to an interest in real property, and the authorities are, I would say, certainly substantial and perhaps even legion that a delay in the conduct of a nonjudicial sale is, does fall within the statute of frauds and requires a writing, because it is. Even when the suit is not against the seller? Yes, when the suit is not against the seller, because it is the exercise of the foreclosure of the lien of the deed of trust that is being negotiated. And so that has to do only with the lien holder and not with the seller. So indeed, the statute of frauds does indeed apply here. I don't think there's any question about that. But I don't think we really even have to reach that, because the Court's determination was made based upon the pleading. The pleading didn't contain a promissory estoppel claim. There was no indication to the Court that they were going to try and plead in a promissory estoppel claim. They simply pled breach of contract, tried it twice. The Court said, no, you can't do it, because there couldn't have arisen a contract between the parties in that regard. And we can't say that the Court abused its discretion. We didn't even have an indication from the appellant that they had any possibility of amending it. Okay. We got the position. Your time has just expired. Thank you very much. Would you like one minute? I will take one. Thank you kindly, Your Honor. Your Honor, the issue of the statute of frauds, without considering whether it should or shouldn't apply to the specific promise at instep issue, is, I think, resolved by the cases cited in our brief. I would direct the Court, especially to the Radeke case, which talks about when, under circumstances quite similar to this, specifically the delay in a foreclosure sale, when there is consideration for such an oral modification to take it outside the statute of frauds. With respect to amendment, I would – I heard the proposed amendments described as conclusory and boilerplate. I would direct Your Honors to pages 12 and the subsequent pages in the brief, 17, just for examples of the contract and fraud proposed amendments. Your opponent said part of the problem here is that you never tendered anything like that to the district court. And because of the deferential standard of review being abuse of discretion, it's not abuse of discretion if you didn't signal in any way to the district court what you had in mind. I've read that paragraph you put in your paperwork, but all it says is, you know, we'd like an opportunity to start over. We'd like an opportunity to amend. Is there some problem in not having brought that to the attention of the district court? I would agree that I should have perhaps given the profit amendments to the district court in the first instance rather than to this court in the second. I would say two other things. First, that the abuse of discretion standard, the discretion is not unfettered. And there is a, to use a term we just heard at the podium, legion number of cases that deal with the liberality of a grant of amendment. But doesn't that suggest that there has to be something that's been brought to the attention of the district court that might fly? Well, let me say two things to that. First, I think, as I said before, it was not proper for the district court to dismiss all the claims in the first instance, particularly the contract and the fraud claims. I think those stood without the need for a further amendment. So I think it is not, you know, should I have been there bidding against myself and saying, okay, but here's what I will say the next go around. That's an arguable point. I would also refer the court to a case cited by Freddie Mac, and I'll stop here, the Donaldson v. Litton loan servicing case, which is the case they cite for the proposition that denying leave to amend is correct. That was a case that involved 20-something claims for relief. It was a first amended complaint. And in the vast majority of those cases, the court, in fact, granted leave to amend. It's not a case that stands for the proposition that the blanket dismissals ought to be sustained here. Okay. Thank you. Thank you very much. Thank you very much for your time, Your Honor. I thank both sides for their arguments. The case of Nercheska v. Federal Homeowner Mortgage Corporation is now submitted for decision. The next case on the argument calendar, Lightfoot v. Sendant Mortgage Corporation. You're sued. Confident jurisdiction.
judges: Stein, Trott, Fletcher